IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ESSAR STEEL MINNESOTA LLC, et al., | : | Chapter 11 |
| | : | Case No. 16-11626 (BLS) |
| Debtors. | : | Jointly Administered |
| | : | |
| MESABI METALLICS COMPANY LLC | : | |
| (f/k/a ESSAR STEEL MINNESOTA LLC) and | : | |
| CHIPPEWA CAPITAL PARTNERS, LLC, | : | Adv. No. 18-50833 (BLS) |
| | : | |
| Appellants-Plaintiffs, | : | |
| v. | : | Civ. No. 19-397-LPS |
| | : | |
| B. RILEY FBR, INC. f/k/a B. RILEY & CO., LLC, | : | |
| | : | |
| Appellee-Defendant. | : | |

## MEMORANDUM ORDER

This appeal having arisen in the Chapter 11 cases of Mesabi Metallics Company LLC and its then-parent holding company ESML Holdings, Inc. (together, "Mesabi" or "Reorganized Debtor"); and having reviewed the papers submitted in connection with the motion of appellants, Reorganized Debtor and Chippewa Capital Partners, LLC ("Chippewa"), seeking a stay pending their appeal (D.I. 12) ("Stay Motion") of the Bankruptcy Court's February 14, 2019 Order (Adv. D.I. 28) ("Order")[1] granting dismissal of an adversary proceeding against appellee B. Riley FBR, Inc. ("B. Riley") for the reasons stated by the Bankruptcy Court on the record at the February 12, 2019 hearing (Adv. D.I. 26); and having considered B. Riley's opposition to the Stay Motion (D.I. 16) and Appellants' reply (D.I. 17); and the Court having determined that oral argument is not

---

[1] The docket of the adversary proceeding, captioned *Mesabi Metallics Company LLC v. B. Riley FBR Inc.*, Adv. No. 18-50833 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __," and the docket of the Chapter 11 cases, captioned *In re Mesabi Metallics Company LLC*, Case No. 16-11626 (BLS) (Bankr. D. Del.), is cited herein as "B.D.I. __."

1

necessary because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument;

**IT IS HEREBY ORDERED** that the Stay Motion (D.I. 12) is **GRANTED** for the reasons that follow:

1. ***Background.*** On July 8, 2016 ("Petition Date"), the Debtor filed voluntary petitions under Chapter 11. On February 22, 2017, third-party ERP Iron Ore ("ERPI") entered into an agreement with B. Riley ("Original Agreement"), pursuant to which B. Riley was retained as exclusive financial advisor to the "Company" (defined as ERPI and its affiliates) to assist ERPI in acquiring the Debtor. B. Riley would receive a "Restructuring Transaction Fee" if ERPI was successful in the acquisition. On March 9, 2017, the parties entered into an amendment ("First Amendment"), which contemplated that B. Riley would "provide additional financial services to the Company" on an exclusive basis relating to a certain financing transaction and that B. Riley would receive a success fee equal to 3% of any debt financing transaction. The definition of "Company" remained unchanged from the Original Agreement to the First Amendment and referred only to "[ERPI] and its affiliates."

2. On June 8, 2017, Mesabi filed its plan of reorganization (B.D.I. 990) ("Plan") with Chippewa as plan sponsor. Thomas Clarke is CEO of Chippewa as well as CEO and controlling owner of ERPI. While Clarke is a former executive of Mesabi, Clarke was not an executive of Mesabi on the Petition Date or at any time during the course of the Chapter 11 cases.

3. On June 13, 2017, the Bankruptcy Court confirmed the Plan. (B.D.I. 1025) ("Confirmation Order") The Plan and Confirmation Order included typical provisions (i) discharging all claims against Mesabi arising prior to the Plan's effective date (Plan § 14.7; Confirmation Order ¶ 52) ("Discharge"), and (ii) enjoining all holders of such claims from pursuing either Mesabi as Reorganized Debtor or Chippewa as Plan sponsor (Plan § 14.22; Confirmation

Order ¶ 56) ("Injunction").  Both the Plan and Confirmation Order also retained jurisdiction over any matter related to the Plan or Chapter 11 cases.  (Plan Art. XIII; Confirmation Order ¶ 51)

4. On December 21, 2017 – one day prior to the Plan's effective date – a Second Amendment to the Original Agreement (as amended by the First Amendment and the Second Amendment, the "Engagement Agreement") was executed.  B. Riley claims that Reorganized Debtor, though not yet in existence, became a party to the Engagement Agreement by virtue of the Second Amendment.  The Second Amendment, executed by ERPI, B. Riley, and Chippewa, changed the definition of "Company," purportedly "for the avoidance of doubt," to include, in addition to ERPI, "Chippewa Capital Partners, LLC, and its subsidiary post-effective date, Mesabi Metallics Company, LLC."  Clarke signed the Second Amendment on behalf of Chippewa and ERPI.  B. Riley has alleged that "Mr. Clarke, in his capacity as CEO of Chippewa (the parent company of Mesabi) executed [the Second Amendment] on behalf of both Chippewa *and Mesabi.*" (Adv. D.I. 13 at 9-10 (emphasis added) (citing statements))  Appellants contend, instead, that Clarke was not CEO of Mesabi when he signed the Second Amendment.

5. On December 22, 2017, the Plan went effective.  Post-Plan effective date, Clarke was designated as CEO of Reorganized Mesabi.  Thereafter, B. Riley demanded a fee of approximately $17 million based on the Engagement Agreement and initiated two actions against Reorganized Debtor and Chippewa without permission from the Bankruptcy Court: (i) an arbitration action ("FINRA Action") before the Financial Industry Regulatory Authority ("FINRA"), initiated on July 25, 2018; and (ii) an action in the United States District Court for the District of Minnesota, Case No. 18-cv-2575-JRT/BRT (D. Minn.) ("Minnesota District Court Action"), initiated on September 4, 2018.  On March 11, 2019, the Minnesota District Court dismissed the Minnesota District Court Action in its entirety, with prejudice, leaving only the FINRA Action.  (*Id.* at D.I. 56).

6. Believing that B. Riley violated the Confirmation Order by prosecuting the FINRA Action and Minnesota District Court Action, Appellants filed a complaint for civil contempt, declaratory judgment, and breach of the Plan. (Adv. D.I. 1) B. Riley moved to dismiss the adversary proceeding. (Adv. D.I. 10) ("Motion to Dismiss") Appellants opposed the Motion to Dismiss (Adv. D.I. 13), arguing, *inter alia*, that (i) Clarke had no authority to bind Reorganized Mesabi prior to the Plan's effective date, and (ii) even if he did, any contract-based claim B. Riley may have against the Debtor arose on December 21, 2017, when the Second Amendment was executed, and was, thus, discharged upon the Plan's effective date on December 22, 2017. According to Reorganized Debtor, the fact that Clarke and Chippewa did not have authority to execute the Second Amendment on behalf of Mesabi prior to the Plan effective date merely shows that the contract upon which B. Riley's claim is based is unenforceable against Mesabi, not that (as B. Riley argues) B. Riley somehow has a post-effective date claim against the Reorganized Debtor. Neither party briefed the issue of the Bankruptcy Court's subject matter jurisdiction.

7. On February 11, 2019, the Bankruptcy Court held oral argument on the Motion to Dismiss and took the matter under advisement. (Adv. D.I. 25) On February 12, 2019, the Bankruptcy Court issued a bench ruling, which included the following:

> Case law teaches that a bankruptcy court's jurisdiction narrows significantly following confirmation. And I am not satisfied that this dispute presents a sufficiently close nexus to implementation of the plan to support this court's exercise of jurisdiction to consider and dispose of this matter.
>
> The record reflects that the parties are in proceedings in Minnesota Federal Court and in a FINRA proceeding. It appears the parties can move forward to be heard and to present their claims and defenses in those proceedings.

(Adv. D.I. 26, 2/12/19 Hr'g Tr. at 4-5) On February 14, 2019, the Bankruptcy Court issued the Order dismissing the adversary proceeding. (Adv. D.I. 28) On February 26, 2019, Appellants appealed the Order and moved for a stay pending appeal so Appellants could request that FINRA

allow Appellants to fully litigate their appeal. (Adv. D.I. 30 & 33) The day after the Order was entered, B. Riley requested that FINRA lift the stay and allow the FINRA Action to proceed. FINRA granted B. Riley's request and set April 5, 2019 as Appellants' answer deadline. On March 7, 2019, the Bankruptcy Court granted a 45-day stay of the Order "to give the District Court an opportunity to deal with what I presume will be a further request from the movant." (Adv. D.I. 43, 3/7/19 Hr'g Tr. at 26)

8. On March 14, 2019, Appellants informed FINRA that the Bankruptcy Court had granted the 45-day stay. On March 18, 2019, FINRA responded via letter that, due to the stay, FINRA would voluntarily stay the FINRA Action and place the matter on its inactive docket. Notwithstanding that stay, B. Riley sent a letter to FINRA requesting that FINRA set the deadline for Appellants to answer in the FINRA Action for April 27, 2019 (two days before the 45-day stay expired). *See* FED. R. BANKR. P. 9006(a)(1)(C). The 45-day stay granted by the Bankruptcy Court expired on April 29, 2019. Thereafter, on May 24, 2019, Appellants received a letter from FINRA lifting the voluntary stay of the FINRA Action. (D.I. 20)

Meanwhile, on March 22, 2019, Appellants filed the Stay Motion in this Court together with a motion requesting Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit. (D.I. 10, 11) ("Certification Motion") No party filed a motion seeking expedited consideration of either the Stay Motion or the Certification Motion. On May 29, 2019, Appellants filed a letter informing the Court of the need for action with respect to the Stay Motion. (D.I. 20) The Stay Motion is fully briefed. (D.I. 12, 16, 18)

9. ***Jurisdiction and Standard for a Stay Pending Appeal.*** Appeals from the bankruptcy court to this court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). A stay pending appeal is extraordinary relief. *See Conestoga Wood Specialties Corp. v. Sec'y of U.S.*

5

*Dep't of Health & Human Servs.*, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). Appellant bears the burden of proving that a stay of the Order is warranted based on the following criteria: (1) whether appellant has made "a strong showing" that it is likely to succeed on the merits; (2) whether appellant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *See Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors are the first two: whether the appellant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *See In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (internal citations omitted). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) ***and*** (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in original; internal quotation marks and citations omitted).

10. ***Likelihood of Success on the Merits.*** A movant satisfies the likelihood of success on the merits prong by showing that "there is a reasonable chance, or probability, of winning." *Id.* at 568 (internal citations and quotation marks omitted). "[T]he likelihood of winning on appeal need not be more likely than not." *Id.* at 569. The Third Circuit has described the bar as "significantly better than negligible but not greater than 50%." *Id.* at 571.

11. The Bankruptcy Court's sole basis for dismissing the Adversary Proceeding was that it lacked subject matter jurisdiction. Accordingly, the Bankruptcy Court's jurisdiction to enforce the Confirmation Order, including by contempt, is the sole issue on appeal. Appellants contend that

the Bankruptcy Court applied the wrong standard and erred in determining that it lacked jurisdiction to interpret its own Confirmation Order, and that their success on appeal is likely for two reasons.

12. First, according Appellants, case law is nearly uniform in holding that bankruptcy courts have core jurisdiction to interpret and enforce their own confirmation orders, including incorporated or resulting discharge injunctions. The Bankruptcy Court dismissed the adversary proceeding on subject matter jurisdiction grounds, holding that the dispute lacked a sufficiently "close nexus" to the implementation of the Plan to support an exercise of "related to" jurisdiction after confirmation. (Adv. D.I. 26, 2/12/19 Hr'g Tr. at 4-5) Appellants argue that when a bankruptcy court has only "related to" jurisdiction, the Third Circuit mandates application of the "close nexus" test to determine the extent of the bankruptcy court's post-confirmation jurisdiction. (*See* D.I. 12 at 13-14) (citing *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004)) Where, however, the matter is "core," according to Appellants, the close nexus test does not apply. (*Id.*) (citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007)) Further, in the view of Appellants, the authority to enforce confirmation orders is widely considered "core." (*Id.* at 15) (citing *In re SemCrude L.P.*, 796 F.3d 310, 316 (3d Cir. 2015) (finding core jurisdiction over motion to enjoin that related to Chapter 11 plan and required determination that claims asserted in state court action belonged to litigation trust created by plan and confirmation order); *In re Gervin*, 300 F. App'x 293, 298 (5th Cir. 2008) ("A proceeding to enforce a discharge injunction is a core proceeding under [28 U.S.C. §] 157(b)(2)(O).")) Here, Appellants argue, all of the claims set forth in the adversary proceeding could only "arise in" or "arise under" a case under title 11 and are, therefore, core.

13. Second, Appellants argue that courts generally recognize that an issuing court has exclusive jurisdiction to redress contempt of a prior injunction order, including injunctions in confirmation orders. (*See id.* at 14) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151

7

(2009)) The Complaint sought contempt sanctions against B. Riley for prosecuting the FINRA Action and Minnesota District Court Action. According to Appellants, the Bankruptcy Court's jurisdiction over that count was not only core, but also exclusive. (*Id*. at 17-18) (citing *In re SelectBuild Ill.*, *LLC*, 2015 Bankr. LEXIS 1790, at *18 (Bankr. D. Del. May 28, 2015) ("[T]he court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."); *Beck v. Gold Key Lease, Inc. (In re Beck)*, 283 B.R. 163, 166 (Bankr. E.D. Pa. 2002) ("As a general principle of law, only the court which issues an injunction has the authority to enforce it."))

14. Based on these arguments and Appellants' cited authorities, the Court concludes that Appellants have carried their burden of establishing a likelihood of success on the merits that is significantly better than negligible. *See Revel*, 802 F.3d at 568.

15. **Irreparable Injury Absent a Stay.** Irreparable harm is "harm that cannot be prevented or fully rectified" by a successful appeal. *Revel AC*, 802 F.3d at 568. A movant for a stay must also demonstrate an injury that is neither remote nor speculative, but actual and imminent. *See id.* at 571. Appellants argue that by dismissing the complaint on subject matter jurisdiction grounds, the Bankruptcy Court consigned these bankruptcy issues to an arbitral body that is not equipped to deal with them. Appellants contend that while FINRA may provide an "efficient and effective venue to handle a securities-related dispute,"[2] FINRA does not claim to have the experience, expertise, and specialized knowledge to arbitrate the intricacies of bankruptcy disputes such as this one. (D.I. 12 at 19) Additionally, the Debtor has never consented to arbitration of its Confirmation Order or Plan. B. Riley counters that the Plan is a contract like any other, and that resolving this dispute invokes the same analysis as any other contract dispute. (D.I. 16 at 16) The Court does not agree with B. Riley. Instead, as B. Riley has admitted, FINRA lacks authority to

---

[2] *Arbitration and Mediation*, FINRA, http://www.finra.org/arbitration-and-mediation.

8

grant Appellants' request for contempt because only the court that issues an injunction has authority to enforce contempt of its injunction. Therefore, the Bankruptcy Court's dismissal, if erroneous, deprives Appellants of the ability to prosecute their contempt claim at all, resulting in irreparable harm to Appellants. Such irreparable harm is imminent, as B. Riley has shown that it will push ahead with full force absent a stay, having previously sent a letter to FINRA prompting it to immediately lift the stay of the FINRA Action, despite Bankruptcy Rule 7062's requirement that parties wait fourteen days before acting on an order. Also, FINRA has now lifted the voluntary stay, and it is clear that the FINRA Action will proceed if a further stay of the Order pending appeal is not granted. Appellants have carried their burden of demonstrating that irreparable injury is likely and imminent in the absence of a stay.

16. ***Injury to Other Parties.*** The Court finds no basis to conclude that B. Riley will be substantially injured by a stay. At most, B. Riley will be delayed in pursuing the FINRA Action, which is not sufficient here to shift the balance in B. Riley's favor.

17. ***Public Interest.*** "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Here that is the case. Appellants argue that gaining clarity on crucial issues of Bankruptcy Court jurisdiction serves the public interest. (*See* D.I. 12 at 22) Appellants assert that "this rationale is amplified where the issue on appeal cuts to the very foundation of bankruptcy law: bankruptcy courts' ability to enforce the discharge injunction." (*Id.*) Conversely, B. Riley argues that denying the stay furthers the public interest by "discouraging forum shopping." (D.I. 16 at 18) B. Riley's forum shopping argument is unpersuasive. Appellants merely sought enforcement of the Injunction and Discharge in the court that issued those orders – and they could not have sought contempt relief in any other forum. The public interest favors imposition of the requested stay.

9

18. *Conclusion*.  For the reasons explained above, the Court will **GRANT** Appellants' Stay Motion.  (D.I. 12)  The Court will rule on the Certification Motion in due course.

June 4, 2019  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE