IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ESSAR STEEL MINNESOTA LLC, et al., | : | Chapter 11 |
| | : | Case No. 16-11626 (BLS) |
| Debtors. | : | Jointly Administered |
| | : | |
| MESABI METALLICS COMPANY LLC | : | |
| (f/k/a ESSAR STEEL MINNESOTA LLC) and | : | |
| CHIPPEWA CAPITAL PARTNERS, LLC, | : | Adv. No. 18-50833 (BLS) |
| | : | |
| Appellants-Plaintiffs, | : | |
| v. | : | Civ. No. 19-397 (LPS) |
| | : | |
| B. RILEY FBR, INC. f/k/a B. RILEY & CO., LLC, | : | |
| | : | |
| Appellee-Defendant. | : | |

**MEMORANDUM**

**I. INTRODUCTION**

This appeal arises in the Chapter 11 cases of Mesabi Metallics Company LLC and its then-parent holding company, ESML Holdings, Inc. (together, "Mesabi" or "Reorganized Debtor"). Together with its Plan sponsor, Chippewa Capital Partners, LLC ("Chippewa," and together with Reorganized Debtor, the "Appellants"), Appellants have appealed from the Bankruptcy Court's February 14, 2019 Order (Adv. D.I. 28) ("Order")[1] granting dismissal of an adversary proceeding brought by Appellants against appellee B. Riley FBR, Inc. ("B. Riley" or "Appellee"), seeking to enforce the plan confirmation order and automatic stay. The Order dismissed the adversary proceeding for the reasons stated by the Bankruptcy Court on the record at a February 12, 2019 hearing. Specifically, the Bankruptcy Court *sua sponte* ruled that the

---

[1] The docket of the adversary proceeding, captioned *Mesabi Metallics Company LLC v. B. Riley FBR Inc.*, Adv. No. 18-50833 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __," and the docket of the Chapter 11 cases, captioned *In re Mesabi Metallics Company LLC*, Case No. 16-11626 (BLS) (Bankr. D. Del.), is cited herein as "B.D.I. __."

1

adversary proceeding lacked "a sufficiently close nexus to implementation of the plan to support this court's exercise of jurisdiction to consider and dispose of this matter." (Adv. D.I. 26, 2/12/19 Hr'g Tr. at 4:23-5:8)

Pending before the Court is Appellants' Motion Requesting Certification of a Direct Appeal to the U.S. Court of Appeals for the Third Circuit (D.I. 10) ("Certification Motion"), which seeks certification under 28 U.S.C. § 158(d)(2)(A)(i) and (ii). According to B. Riley, neither § 158(d)(2)(A)(i) nor (ii) presents a proper basis for certification. However, B. Riley agrees that the appeal should be certified, but only under § 158(d)(2)(A)(iii). (D.I. 15) Appellants agree that § 158(d)(2)(A)(iii) presents an adequate basis for certification of the appeal, although one which Appellants contend is weaker than their proffered bases. (D.I. 17)

The Court believes that certification of a direct appeal is warranted under all of the provisions cited by the parties. Thus, the Court will certify the appeal under § 158(d)(2)(A)(i), (ii), and (iii).

## II. BACKGROUND

On July 8, 2016, the Debtor filed voluntary petitions under Chapter 11. On February 22, 2017, third-party ERP Iron Ore ("ERPI") entered into an agreement with B. Riley ("Original Agreement"), pursuant to which B. Riley was retained as exclusive financial advisor to the "Company" (defined as ERPI and its affiliates) to assist ERPI in acquiring the Debtor. B. Riley would receive a "Restructuring Transaction Fee" if ERPI was successful in the acquisition. On March 9, 2017, the parties entered into an amendment ("First Amendment"), which contemplated that B. Riley would "provide additional financial services to the Company" on an exclusive basis relating to a certain financing transaction and that B. Riley would receive a success fee equal to 3% of any debt financing transaction. The definition of "Company"

2

remained unchanged from the Original Agreement to the First Amendment, referring only to "[ERPI] and its affiliates."

On June 8, 2017, Mesabi filed its plan of reorganization (B.D.I. 990) ("Plan"), with Chippewa as plan sponsor. Thomas Clarke is CEO of Chippewa as well as CEO and controlling owner of ERPI. While Clarke is a former executive of Mesabi, Clarke was not an executive of Mesabi on the Petition Date or at any time during the course of the Chapter 11 cases.

On June 13, 2017, the Bankruptcy Court confirmed the Plan (B.D.I. 1025) ("Confirmation Order"). The Plan and Confirmation Order included typical provisions (i) discharging all claims against Mesabi arising prior to the Plan's effective date (Plan § 14.7; Confirmation Order ¶ 52) ("Discharge Injunction"), and (ii) enjoining all holders of such claims from pursuing either Mesabi as Reorganized Debtor or Chippewa as Plan sponsor (Plan § 14.22; Confirmation Order ¶ 56) ("Injunction"). Both the Plan and Confirmation Order also retained jurisdiction in the Bankruptcy Court over any matter related to the Plan or Chapter 11 cases. (Plan Art. XIII; Confirmation Order ¶ 51)

On December 21, 2017 – one day prior to the Plan's effective date – a Second Amendment to the Engagement Agreement was executed. B. Riley claims that the Reorganized Debtor, though not yet in existence, became a party to the Engagement Agreement by virtue of the Second Amendment. The Second Amendment, executed by ERPI, B. Riley, and Chippewa, changed the definition of "Company," purportedly "for the avoidance of doubt," to include, in addition to ERPI, "Chippewa Capital Partners, LLC, and its subsidiary post-effective date, Mesabi Metallics Company, LLC." Clarke signed the Second Amendment on behalf of Chippewa and ERPI. B. Riley has alleged that "Mr. Clarke, in his capacity as CEO of Chippewa (the parent company of Mesabi) executed [the Second Amendment] on behalf of both Chippewa

3

*and Mesabi.*" (*See* Adv. D.I. 13 at 9-10 (citing statements) (emphasis added)) Appellants contend that Clarke was not CEO of Mesabi when he signed the Second Amendment.

On December 22, 2017, the Plan went effective. Post-Plan effective date, Clarke was designated as CEO of Reorganized Mesabi. Thereafter, B. Riley demanded a fee of approximately $17 million, based on the Engagement Agreement, and initiated two actions against Reorganized Debtor and Chippewa, though without permission from the Bankruptcy Court: (i) an arbitration action before FINRA ("FINRA Action"), initiated on July 25, 2018; and (ii) a complaint and motion for temporary restraining order ("Motion") in the United States District Court for the District of Minnesota, Case No. 18-cv-2575-JRT/BRT (D. Minn.) ("Minnesota District Court Action"), initiated on September 4, 2018, against Clarke, Mesabi, and Chippewa, seeking to enjoin them from using, reducing, diminishing, transferring, disposing of, and/or in any respect dissipating, the amount of $17 million. The Minnesota Motion was heard on November 2, 2018 and denied on November 21, 2018. On March 11, 2019, the Minnesota District Court dismissed the Minnesota District Court Action in its entirety, with prejudice, leaving the FINRA Action.[2] (*Id.* at D.I. 56)

Believing that B. Riley violated the Confirmation Order by prosecuting the FINRA Arbitration and Minnesota District Court Action, Appellants filed a complaint for civil contempt, declaratory judgment, and breach of the Plan. (Adv. D.I. 1) B. Riley moved to dismiss this

---

[2] B. Riley also brought an action against Clarke personally, alleging fraud in relation to the negotiation, execution, and performance of the agreements. *See B. Riley FBR, Inc. v. Thomas M. Clarke*, Civ. No. 18-2318 (NEB/BRT) (D. Minn.) at D.I. 60 (amended complaint). On September 6, 2019, the Minnesota District Court granted in part and denied in part Clarke's motion to dismiss the amended complaint. *Id.* at D.I. 96. The docket reflects that this action is not stayed and that discovery is proceeding, including third-party discovery requests from Mesabi. *Id.* at D.I. 131. Under the current scheduling order (*id.* at D.I. 127), fact discovery is set to conclude by September 8, 2020; dispositive motions are due no later than November 11, 2020; and a jury trial may be scheduled as early as April 13, 2021.

4

adversary proceeding (Adv. D.I. 10) ("Motion to Dismiss"), arguing, *inter alia*, that its claim cannot be a pre-effective date claim enjoined by the Plan. Appellants opposed the Motion to Dismiss (Adv. D.I. 13), arguing, *inter alia*, that (i) Clarke had no authority to bind Reorganized Mesabi prior to the Plan's effective date, and (ii) even if he did, any contract-based claim B. Riley may have against the Debtor arose on December 21, 2017, when the Second Amendment was executed, and was, thus, discharged upon the Plan's effective date on December 22, 2017. According to Debtors, the fact that Clarke and Chippewa did not have authority to execute the Second Amendment on behalf of Mesabi prior to the Plan effective date merely shows that the contract upon which B. Riley's claim is based is unenforceable against Mesabi, not that (as B. Riley argues) B. Riley somehow has a post-effective date claim against the Reorganized Debtor. Appellants continue that a claim based on an unenforceable contract is subject to disallowance under § 502(b)(1) of the Bankruptcy Code, but pursuit of such a claim that arose pre-effective date is still a violation of the Plan and Confirmation Order.

On November 15, 2018, B. Riley filed its reply in further support of the Motion to Dismiss. Neither party briefed the issue of the Bankruptcy Court's subject matter jurisdiction.

On February 11, 2019, the Bankruptcy Court held oral argument on the Motion to Dismiss and took the matter under advisement. (Adv. D.I. 25) On February 12, 2019, the Bankruptcy Court issued a bench ruling, which included the following:

> Case law teaches that a bankruptcy court's jurisdiction narrows significantly following confirmation. And I am not satisfied that this dispute presents a sufficiently close nexus to implementation of the plan to support this court's exercise of jurisdiction to consider and dispose of this matter.
>
> The record reflects that the parties are in proceedings in Minnesota Federal Court and in a FINRA proceeding. It appears the parties can move forward to be heard and to present their claims and defenses in those proceedings.

5

(Adv. D.I. 26, 2/12/19 Hr'g Tr. at 4:23-5:8) On February 14, 2019, the Bankruptcy Court issued the Order dismissing the adversary proceeding. (Adv. D.I. 28)

On February 26, 2019, Appellants appealed the Order and moved for a stay pending appeal so they could request that FINRA allow Appellants to fully litigate their appeal. (Adv. D.I. 30 & 33) On March 7, 2019, the Bankruptcy Court granted a 45-day stay of the Order "to give the District Court an opportunity to deal with what I presume will be a further request from the movant." (Adv. D.I. 43, 3/7/19 Hr'g Tr. at 26:12-22) On June 4, 2019, this Court granted a stay pending appeal. (D.I. 21)

The Certification Motion is fully briefed. (D.I. 10, 15, 17, 23, 27) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

### III. JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). Motions for direct appeal to the court of appeals are governed by 28 U.S.C. § 158(d)(2), which sets out circumstances under which a district court may certify a final order for immediate appeal to the court of appeals. Specifically, section 158(d)(2)(A) provides, in pertinent part, the "court of appeals shall have jurisdiction of appeals" if the district court certifies that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

6

> (iii) an immediate appeal from the judgment, order, or decree
> may materially advance the progress of the case or proceeding
> in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A). Further, pursuant to § 158(d)(2)(B), a district court "shall make the certification" described in 158(d)(2)(A) if it "determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists" or if the district court "receives a request by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A)." *See also In re Tribune Co.*, 477 B.R. 465, 470 (Bankr. D. Del. 2012). "While the section [subparagraph (A)] contains three subparts, there are actually four disjunctive criteria as subpart (i) sets forth two separate benchmarks for certification." *In re Millennium Lab Holdings, II, LLC*, 2016 WL 155500, *4 (Bankr. D. Del. Jan. 12, 2016).

## IV. DISCUSSION

The issues for which Appellants request certification are: (1) whether the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction to interpret and implement the Discharge Injunction it issued by prior Confirmation Order and related Plan, and (2) whether the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction to redress contempt of its prior Confirmation Order. (D.I. 10 at 8; D.I. 17 at 4) The Court will certify these issues for direct appeal to the Court of Appeals for the Third Circuit.

The Certification Motion arises in an unusual procedural posture. Appellants as well as Appellee request certification. On the record before the Court, no one objects to certification. However, while Appellants identify three bases for certification, Appellee vigorously disputes the applicability of those bases, yet identifies a fourth basis it contends justifies certification. Appellants, in turn, do not challenge that Appellee's basis for certification is satisfied, but they do denigrate it as being as "weaker" basis than any of their proffered three bases. Neither side

7

provides the Court with any explanation for why it matters which basis the Court cites for certifying or why (if at all) the Court needs to choose among the bases cited by the parties.

Under the circumstances, it is clear that the Certification Motion should be granted. Arguments to varying degrees of persuasiveness are made with respect to each of the four bases offered by the parties. The Court briefly discusses each basis below.

### A.     Absence of a Controlling Decision

The first prong of subsection (i) contemplates certification of an appeal where "the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States." 28 U.S.C. § 158(d)(2)(A)(i). "A 'controlling decision' of the Third Circuit for the purposes of § 158(d)(2)(A)(i) is one that admits of no ambiguity in resolving the issue." *Stanziale v. Car-Ber Testing, Inc. (In re Conex Holdings, LLC)*, 534 B.R. 606, 611 (D. Del. March 23, 2015) (internal citation omitted).

Appellants argue that certification for direct appeal is appropriate under subsection (i) because there is no controlling decision that unambiguously answers the particular issues presented in this appeal. Appellants argue that while district courts widely recognize that bankruptcy courts have "core" jurisdiction to interpret and enforce their own confirmation orders,[3] there is no unambiguous confirmation of this view from the Supreme Court or the Third

---

[3] *See, e.g., HHI FormTech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 357 (Bankr. D. Del. 2010) ("Enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction."); *In re Christ Hosp.*, 502 B.R. 158, 179-80 (Bankr. D.N.J. 2013) (finding enforcement of confirmation order is core under 157(b)(2)(L) because "[e]nforcement motions relating to such orders are likewise 'core' and squarely within this court's jurisdiction to hear and determine"); *In re G-I Holdings, Inc.*, 580 B.R. 388, 424 (Bankr. D.N.J. 2018) ("Enforcing the discharge injunction is within this Court's core jurisdiction because it is enforcing this Court's confirmation order based on rights provided in the Code: the discharge in 11 U.S.C. § 1141(d)

Circuit. Appellants explain that while there are binding appellate decisions on related questions – e.g., a bankruptcy court determines whether it has post-confirmation jurisdiction over non-core, "related to" matters by application of the "close nexus" test, *see Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166 (3d Cir. 2004), and the close nexus test does ***not*** apply when determining whether a bankruptcy court has jurisdiction over "core" proceedings (it only applies when determining a bankruptcy court's jurisdiction over postconfirmation, ***non-core*** proceedings, *see Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) – these holdings do not directly answer the question posed here.

B. Riley counters that Appellants have misapprehended the nature of the issue they raise and have misconstrued *Resorts*. B. Riley argues that there is no such thing as "core jurisdiction;" rather, jurisdiction must be "arising in," "arising under," or "related to." (D.I. 15 at 14-15) According to B. Riley:

> Once the court determines that subject matter jurisdiction exists, the court must determine whether the matter of which it has jurisdiction is "core" or "non-core." If the matter is "core," with limited exception, the bankruptcy court can enter final judgment. If the matter is non-core, the bankruptcy court must enter proposed findings and recommendations for the district court to consider. Whether a matter is "core" is not dispositive of underlying subject matter jurisdiction.

(*Id.* at 15) Based on the foregoing, B. Riley argues that Appellants have "misrepresent[ed] the holding and import of *Resorts*:"

---

and the discharge injunction in 11 U.S.C. § 524(a)(2), and therefore, is a proceeding 'arising in' a case under title 11.") (internal quotation marks omitted); *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) ("There can be no question that a proceeding such as this, to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding "arising in or related to a case under title 11.").

9

> Appellants describe this decision as holding "that [whether] a bankruptcy court has post-confirmation jurisdiction over non-core, "related to" matters is evaluated under the 'close nexus' test." But the Third Circuit held no such thing. In fact, *it applied the "close nexus" test governing related-to jurisdiction without even deciding whether the underlying claims constituted "core" proceedings*. *Resorts*, 372 F.3d at 162 ("Regardless, we need not resolve whether this is a 'core' proceeding for subject matter jurisdictional purposes because '[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.' Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding but still might not be able to enter final judgments and order."). Appellants' understanding of this decision – and its implication on the Bankruptcy Court's jurisdiction over the Adversary Proceeding – are woefully misplaced.

(*Id.* at 12) (emphasis in original)

In reply, Appellants contend that the universe of "core" proceedings is coextensive with the combined universe of "arising in" and "arising under" proceedings. (D.I. 17 at 2-3) They point to 28 U.S.C. § 157(b), which describes core matters as those "arising under [the Bankruptcy Code], or arising in a case under [the Bankruptcy Code]." In contrast, a matter that is "otherwise related to a [bankruptcy case]" "is not a core proceeding" – it is instead, in bankruptcy parlance, "non-core." 28 U.S.C. § 157(c). This equivalency is true to such an extent that the Third Circuit has repeatedly recognized the term "core" is interchangeable with "arising in" and "arising under." *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 226 (3d Cir. 2004) ("[P]roceedings arising under title 11[] and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."); *Geruschat*, 505 F.3d at 251 (defining "'related to'" jurisdiction as "noncore jurisdiction and 'arising under title 11 or arising in a case under title 11'" as "core jurisdiction"). Even the Supreme Court has observed that "core" and "related to" matters are mutually exclusive. *Stern v. Marshall*, 564 U.S. 462, 477 (2011) ("It does not make

10

sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a typical feature of congressional drafting."). As such, a determination that a proceeding is "core" is a determination that it falls within 28 U.S.C. § 1334(b) bankruptcy subject matter jurisdiction, whether as "arising in" or "arising under" jurisdiction.

The United States Supreme Court suggests that bankruptcy courts "plainly" have jurisdiction to enforce their own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). But *Travelers* does not explicitly provide that such jurisdiction is "core." *See generally id.* at 137. Another Third Circuit decision found that interpretation and enforcement of a bankruptcy court ***sale order*** constitutes a core proceeding. *See Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Emples., AFSCME, Dist. 1199C (In re Allegheny Health, Educ. & Research Found.)*, 383 F.3d 169, 175-76 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders."). But that decision does not explicitly provide that interpretation and enforcement of a confirmation order constitutes a core proceeding.[4]

The Court agrees with Appellants' view of where there are open legal issues. *Centennial* does not hold that a proceeding to interpret and enforce a discharge injunction in a ***confirmation order*** is core; nor does any other binding decision of the Third Circuit or Supreme Court unambiguously answer that question. Thus, the decision being appealed cannot be said to

---

[4] Appellants contend that the rule of *Centennial* should easily extend to confirmation orders, as other district and bankruptcy courts have found. *See, e.g., In re Christ Hosp.*, 502 B.R. 158, 179-80 (Bankr. D.N.J. 2013) (finding enforcement of both sale order and confirmation order is core under § 157(b)(2)(L) (regarding confirmation orders) and § 157(b)(2)(N) (regarding sale orders), respectively, because "[e]nforcement motions relating to such orders are likewise 'core' and squarely within this court's jurisdiction to hear and determine").

11

"admit[] of no ambiguity in resolving the issue." Accordingly, certification is appropriate under the first prong of § 158(d)(2)(A)(i).

### B. Public Importance

Courts have interpreted the "public importance" prong of 28 U.S.C. § 158(d)(2)(A)(i) narrowly. *See In re Nortel Networks Corp.*, 2010 WL 1172642, *1 (Bankr. D. Del. Mar. 18, 2010). The issue on appeal does not constitute a matter of "public importance" unless it "transcend[s] the litigants and involve[s] a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (quoting 1 COLLIER ON BANKRUPTCY ¶ 5.05[A] (15th ed. rev.)). An appeal that impacts only the parties, and not the public at large, is not "a matter of public importance." *See Goody's*, 2009 WL 2355705, at *2.

Appellants argue that "[d]etermination of the extent of the Bankruptcy Court's authority to enforce the discharge injunction in its own Confirmation Order is a purely legal question that transcends the litigants in this case and is of the utmost public importance." (D.I. 10 at 19) Here, in Appellants' view, allowing the Bankruptcy Court's Order to stand may undermine the Bankruptcy Code's debtor protections provided in §§ 524 and 1141(d), because the Order disclaims core jurisdiction over enforcement of a discharge injunction.

The Court agrees that certification of the issue on appeal may aid in upholding fundamental bankruptcy protections and is of sufficient public importance to warrant certification. Additionally, the resolution of this issue may have important practical ramifications. As Appellants point out, parties in situations similar to that of B. Riley may attempt to gain strategic advantage by moving for dismissal of post-confirmation discharge

injunction enforcement actions, which Appellants argue are squarely within bankruptcy court jurisdiction.

### C. Resolution of Conflicting Decisions

Appellants argue that certification is also appropriate under § 158(d)(2)(A)(ii) because numerous decisions conflict with the Bankruptcy Court's determination here. "Conflicting decisions" can be sufficient to warrant direct appeal under subsection (ii) where the decision to be appealed conflicts with pre-existing decisions from other lower courts within the circuit. *See Millennium Lab Holdings*, 543 B.R. at 713-25 (certifying issue for appeal where bankruptcy court's ruling conflicted with another pre-existing bankruptcy court decision within circuit); *In re Blue Stone Real Estate, Const. & Dev. Corp.*, 396 B.R. 555, 561 (Bankr. M.D. Fla. 2008) (same).

Here, the Bankruptcy Court's Order conflicts with various decisions of other bankruptcy courts and district courts, including those within the Third Circuit.[5] Numerous lower court decisions within this circuit hold that a bankruptcy court has core jurisdiction to enforce a discharge injunction in a confirmation order. *See, e.g., In re G-I Holdings, Inc.*, 580 B.R. 388, 424 (Bankr. D.N.J. 2018) ("Enforcing the discharge injunction is within this Court's core jurisdiction because it is enforcing this Court's confirmation order based on rights provided in

---

[5] The parties identified only one in-circuit decision where enforcing a confirmation order was deemed "related to" – and in that case the court found jurisdiction existed nevertheless. *See In re SelectBuild Ill., LLC*, 2015 Bankr. LEXIS 1790, at *17 (Bankr. D. Del. May 28, 2015) ("[C]ourts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order.") (quoting *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) (citations omitted)). Relying on the Third Circuit's close nexus test, the *SelectBuild* court ruled: "The Motion seeks interpretation and implementation of the discharge injunction of the confirmed Plan; therefore, the relief sought in the Motion falls within the confines of postconfirmation related-to jurisdiction." *Id.* at *18-19. In the instant case, the Bankruptcy Court followed *SelectBuild* by applying the "close nexus" test in determining whether it had post-confirmation jurisdiction over the dispute but departed from *SelectBuild* in finding it lacked jurisdiction nonetheless.

13

the Code . . . and therefore, is a proceeding 'arising in' a case under title 11.") (internal quotation marks omitted); *HHI Formtech, LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC)*, 439 B.R. 352, 357 (Bankr. D. Del. 2010) (Walrath, J.) ("Enforcement and interpretation of orders issued in core proceedings [*e.g.*, confirmation orders, *see* 28 U.S.C. § 157(b)(2)(L)] are also considered core proceedings within the bankruptcy court's jurisdiction."); *Meyer v. Wells Fargo Bank, N.A. (In re Meyer)*, 2018 Bankr. LEXIS 1041, at *9 (Bankr. M.D. Pa. Apr. 4, 2018) ("It is essential for a bankruptcy court to have jurisdiction to enforce its own orders, including enforcement of a discharge injunction. . . . This Court therefore has core subject matter jurisdiction to hear and decide claims regarding alleged violations of the discharge injunction."); *Trs. of Conneaut Lake Park, Inc. v. Park Restoration, LLC (In re Trs. of Conneaut Lake Park, Inc.)*, 2018 Bankr. LEXIS 1447, at *1 (Bankr. W.D. Pa. May 15, 2018) ("The Motion to Enforce [the discharge injunction] is a core proceeding.").

In the Court's view, the conflicting decisions requirement for certification under subsection (ii) is, thus, satisfied.

### D.    Advancing the Proceeding

Certification is appropriate under 28 U.S.C. § 158(d)(2)(A)(iii) where an immediate appeal from the order may materially advance the progress of the case. In determining whether to certify an appeal under this provision, the Court must determine whether there is anything "extraordinary or urgent about this situation that recommends departing from the standard appellate process." *Conex Holdings*, 534 B.R. at 606.

B. Riley cites this subsection (iii) as the only meritorious basis for certification. In doing so, B. Riley contends that a definitive decision from the Third Circuit will allow B. Riley to proceed with the FINRA Action without further delay. Otherwise, in B. Riley's view, a final

resolution of these issues may take years, during which Appellants may deplete their resources, potentially harming B. Riley. (*See, e.g.*, D.I. 15 at 16) Appellants dispute much of B. Riley's argumentation but, nonetheless, do not contest that an immediate appeal may materially advance the progress of the case.

Based on the facts and circumstances of this appeal, and given the parties' consensus on this factor, the Court concludes that certification for direct appeal under § 158(d)(2)(A)(iii) is also appropriate.

## V. CONCLUSION

Accordingly, the Court will grant Appellants' Certification Motion (D.I. 10). An appropriate Order follows.

July 1, 2020  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE